## LULA JOHNSON *v.* STATE.

[64 South. 261.]

1. JURY. *Remarks of judge.*
    A defendant charged with a criminal offense should not be compelled to go to trial before a jury composed of men who at the time they were impaneled, were told by the presiding judge, that persons such as defendant was charged to be, were unworthy of belief and would lie and commit perjury, particularly where defendant was the only witness in her own behalf.

2. SAME.
    A presiding judge may speak for law enforcement and against crime, but he should not denounce those accused.

APPEAL from the circuit court of Jones county.

HON. PAUL B. JOHNSON, Judge.

Lula Johnson was convicted of the unlawful sale of intoxicating liquors and appeals.

The facts are fully stated in the opinion of the court.

*Robert L. Bullard,* for appellant.

In the case of *Lamar* v. *State,* 2 So. 12, Judge CAMPBELL begins the opinion as follows: "The verdict rendered was demanded by the evidence and the law, and if there was no other question on the record, the conviction would be affirmed without hesitation; but, although we approve the verdict as the proper result of the testimony and the law, if the accused did not have such a trial as he was entitled to, he should have it, for no one should suffer the penalty of the law until he has been condemned according to its requirements."

We submit to the court that this appellant did not have that fair trial here discussed. She had no means of proving her defense but by her own testimony. She was entitled to have that testimony received and considered by the jury as they would consider the testimony of any other witness, uninfluenced by anything outside of what lawfully came before them during the course of the trial. Before the trial began those jurors had thundered in their ears and sunk into their consciousness by the court, the statement officially made, that she, as one accused or guilty of this crime, would lie and commit perjury and was unworthy of belief unless she was corroborated by other witnesses. The jurors as thus admonished of course disregarded her defense, which was perfect if true, and the verdict followed of course.

Was the statement of the judge such that it might have influenced the jury to her prejudice? No one will seriously contend that it was not. Then the law presumes that it did and this presumption is conclusive.

Did it influence the jury in passing upon her testimony? It is unthinkable that it did not, but this court

will not permit the verdict to stand if it probably influenced them to her prejudice. *Collins* v. *State*, 54 So. 665; *Lamar* v. *State*, 2 So. 12.

*Ross A. Collins*, attorney-general, for the state.

The counsel for the appellant bases his argument for a new trial in this case upon two errors that he claims were committed by the trial court. The first contention is that the court erred in stating in the presence and hearing of the grand jurors and petit jurors, that a "blind tiger" would lie and commit perjury and then said, "I would not believe one of them if he swore that his wife was dead unless he was corroborated by other witnesses." And second that the court erred in refusing a peremptory instruction for the defendant which was requested on the ground that the offense attempted to be proven was subsequent to the indictment.

In support of the first contention the counsel for appellant cites the cases of *Lamar* v. *State*, 2 So. 12, and *Collins* v. *State*, 54 So. 665. There is no similarity between either of these cases and the case at bar. In the Lamar case one of the jurors was called from the jury box, and interrogated first in the presence of his fellows, and afterwards in their absence, as to his having visited the prisoner in jail, and whether or not he had declared his purpose to get on the jury in order to acquit the accused. Of course it was manifest error to proceed with the trial before the same jury after such a hearing. In the Collins case the appellant made an application for a continuance on account of the absence of two witnesses. When this application came up for hearing, the court called the defendant to the witness stand, had her sworn and examined her over the objection of counsel for defendant, ridiculed her testimony and tried the case the same day before the jurors who had heard him examine the defendant.

In the case at bar, however, the language complained of was used on the first day of court without reference

to any specific case, and was only intended to impress upon the grand jury the importance of the duty that they were to perform. Where the record shows that a just and proper verdict has been returned by the jury, the unauthorized generalizations of the trial judge should not be held reversible error. In the case of *Butler* v. *State*, 59 So. 845, the trial judge said that he wanted to make his court a business court, meaning thereby that he wanted persons accused of crime convicted and fined to pay the expense of carrying on court. In affirming this case the supreme court speaking through Judge COOK, said: "The judge's remarks were made at the beginning of the term, and not at the trial of this case; and while we think that the judge exceeded his powers, we do not think he erred in refusing to quash the panel. We do not think that the unauthorized generalizations of the judge about the enforcement of the law, spoken to jurors at some other time than at the trial of the complaining party, can justify a reversal of the case." There is no foundation to the second contention of counsel for appellant whatever.

REED, J., delivered the opinion of the court.

Appellant was indicted for the unlawful sale of intoxicating liquors. When her case was called for trial on the second day of the term, being the 24th day of September, 1912, she presented a motion for continuance and therein set forth the following: "On the 23d day of this month, the same being the first day of this term of the court, the presiding judge thereof in his charge to the grand jury, and in the presence and hearing of all the petit jurors who are now in attendance on said court for the trial of the issues therein and of this defendant, said to and in the presence and hearing of said grand jurors and petit jurors that a 'blind tiger,' meaning thereby one who is charged with selling intoxicating liquors unlawfully, was and is unworthy of belief, and that

they would lie and commit perjury, and then and there said, 'I would not believe one of them if he swore that his wife was dead unless he was corroborated by other witnesses.'˜ This defendant was then under this indictment charging her with having unlawfully sold intoxicating liquors and she knows of no witness, other than her own testimony by which to establish her innocence or her defense, and she therefore says that it would be unfair to place her on her trial by petit jurors before whom her testimony has already been discredited as being unworthy of belief.'' She was tried and convicted.

On the third day of the term, the 25th day of September, 1912, the trial judge signed a bill of exceptions from which we take the following statement showing the hearing and disposition of the motion for continuance: ''When said motion was presented to the presiding judge of said court, he, the said presiding judge of said court, then and there stated that the subject-matter of said motion was true, and that he, the said judge, did use before the grand jurors and the said petit jurors the words and language set out in said motion, and did then and there without hearing any proof upon said motion overrule the same, and ordered that said cause then and there proceed to trial before said petit jurors, and did also cause an order to be entered upon the minutes of said court overruling and disallowing said motion.''

The trial judge should be discreet in his remarks in the presence of the men who compose, or who are about˙ to be organized into, a jury. Great reliance is placed in what he says. His utterances are listened to attentively. All of his acts are watched. His conduct and words may easily operate to prejudice the rights of the party before the court for trial. He should be impartial and very careful to˙ the end that the jury may not be improperly influenced and so that the one charged with crime, no matter how humble, unfortunate, or depraved, shall have a fair trial and his guilt determined in the manner provided by law.

Judge CAMPBELL, in the case of *Lamar* v. *State,* 64 Miss. 687, 2 So. 12, said: "The legal theory of a trial by jury is the selection of an impartial body from the county, and its trial of the case free from any influence except that produced by the testimony and law and legitimate argument, and any subjection of the jury to any other influence is carefully guarded against."

In the case of *Green* v. *State,* 97 Miss. 834, 53 So. 415, Judge ANDERSON, delivering the opinion of the court, said: "It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party. 21 Ency. P. & P. 994, 995, and notes. The court will not stop to inquire whether the jury were actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption."

This case is not controlled by the decision in the case of *Butler* v. *State,* 102 Miss. 575, 59 So. 845. In that case the judge at the time of the impaneling of the petit juries stated that he desired to hold a business term of the court, which he could only accomplish with the co-operation of the people, and that he wanted the court to be self-sustaining. The difference in the statements by the judges in the two cases will be noticed. In the Butler case it is not shown that he criticised disparagingly and declared perjurers those committing a certain misde-

meanor. In that case it will be noticed this court disapproved the remarks by the judge and· said in the opinion that he had exceeded his powers.

Appellant should not have been required to go to trial before a jury composed of men who at the time they were impaneled, just the preceding day, were told by the presiding judge that persons, such as she was charged to be, were unworthy of belief and would lie and commit perjury. It appears from the record that she ·was the only witness in her own behalf; but the jury had been told that she was unworthy of belief. It cannot be said that she had the fair trial guaranteed to her by the law.

The presiding judge may speak for law enforcement and against crime, but he should not denounce those·accused. The unfortunates of society, criminals we may call them, are entitled to receive from the state justice and fairness and all protections of the law when they are being proceeded against for their criminal acts. This is so even in the case of the "blind tiger," or, if the unfortunate is of the other sex, called "blind tigress."

*Reversed and remanded.*